**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| RON CHALLIS, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No.: |
| v. | |
| WEBER-STEPHEN PRODUCTS LLC, | |
| Defendant. | |

Plaintiff Ron Challis ("Plaintiff") brings this action on behalf of himself, and all others similarly situated against Weber-Stephen Products LLC ("Defendant") based on personal knowledge as to himself, the investigation of his counsel, and on information and belief as to all other matters.

**NATURE OF ACTION**

1. This case concerns a deceptively dangerous product and its manufacturer's inadequate recall efforts. After selling roughly 3.2 million Weber-branded metal bristle grill brushes, Defendant announced a nationwide recall instructing its customers to stop using them immediately because the small metal bristles on the products could detach from the brush and stick to the grill or food, posing a risk of serious injury. Scores of consumers have reported experiencing the defect, including consumer reports of consumers who swallowed the bristles and were required to seek medical treatment. And yet, Defendant refuses to give consumers their money back for these products, instead only offering replacement units that may only be used when the grill is cold (as compared to when the grill is hot.). This is a case of protecting the bottom line at all costs.

2. On February 26, 2026, Defendant and the U.S. Consumer Product Safety Commission ("CPSC") announced the recall of roughly 3.2 million Weber-branded metal bristle grill brushes (the "Products").[1] Consumers were warned to "immediately stop using the recalled grill brushes" because the Products' "[s]mall metal wire bristles can detach from the brushes." The recall notice stated that "Weber is aware of at least 38 reports and reviews where small wire bristles detached from the grill brushes, including four reports of consumers who swallowed metal bristles and sought medical treatment to remove the bristles from their digestive tract or throat." The potential of the Products' bristles detaching while in use is referred to herein as the "Defect."

3. Defendant refuses to refund customers that purchased the Products. Instead, Defendant implemented a deficient recall that allows them to *say* they are doing the right thing, when in fact the primary objective is to protect its bottom line.

4. Any requests for full refunds are denied. Consumers only have one option – discard the recalled grill brushes and obtain a cold cleaning nylon bristle grill brush replacement. However, the replacement is not a substitute for the Products. The Products were designed for use on hot grills to easier enable cleaning of heavily used or dirty grills. The replacement product may only be used on a grill that is cold, because they may otherwise melt when used. Consumers did not bargain for a grill where the bristles could detach and injure them without notice. Nor did they bargain for a brush which may only be used when the grill is cold.

5. By design, the recall received very little publication, with the result that the response rate has been low. And, an offer of a substitute replacement product guarantees that customers who have lost faith in Defendant's products, or who do not want to risk being injured

---

[1] https://www.cpsc.gov/Recalls/2026/Weber-Recalls-Over-3-2-Million-Metal-Wire-Bristle-Grill-Brushes-Due-to-Ingestion-Hazard

by the Defect, are left with no recourse. Further, consumers whose Products were discarded are also left without recourse. This approach benefits Defendant by minimizing the cost and burden of the recall.

6. Plaintiff is filing this class action lawsuit to seek all available relief to consumers, to raise awareness that Defendant's Products are a hazard, and to "encourage companies to take greater care in avoiding the production [and sale] of hazardous products in the first place." *Kaupelis v. Harbor Freight Tools USA, Inc.*, 2019 WL 6998661 at *10 (C.D. Cal. Oct. 9, 2019) (quoting *In re Mattel, Inc.*, 588 F. Supp. 2d 1111, 1115-16 (C.D. Cal. 2008)).

### **PARTIES**

7. Plaintiff Ron Challis is a resident of Solvang, California. Plaintiff purchased a Weber-branded metal bristle grill brush that is part of the February 26, 2026 CPSC Recall from Valley Hardware in Solvang, California in Spring of 2023. Plaintiff experienced a manifestation of the defect, and due to the recall has stopped using the Product.

8. Before purchasing the Product, Plaintiff reviewed the Product's item details, descriptions, product specifications and features. Defendant's materials failed to disclose the existence of the defect at issue in this action. Neither the Products' packaging, labeling, or any other information surrounding the Product disclosed or suggested in any way that the Product contained the Defect. If the Product's labeling, packaging, or advertising had disclosed the Defect, then Plaintiff would not have purchased the Product, or would not have purchased the Product on the same terms.

9. Defendant Weber-Stephen Products LLC is a Delaware corporation, with its registered agent and principal place of business located in Palatine, Illinois.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is citizen of a state different from Defendant.

11.     This Court has personal jurisdiction over Defendant because it conducts and transacts business in the state of Illinois and is headquartered in Palatine, Illinois such that it has significant, continuous, and pervasive contacts with the State of Delaware.

12.     Venue is proper pursuant to 28 U.S.C. § 139 because Defendant transacts substantial business in this District.

## FACTUAL ALLEGATIONS

13.     **Products at issue:**  the Weber-branded metal bristle grill brushes at issue in this case were sold nationwide at major retailers like Lowe's, Home Depot, Ace Hardware, and Target, and online at Amazon and Weber.com from 2011 through 2026 for between $10 to $17.  There were approximately 3.2 million units sold during this period in the United States.  The recall includes the following models:

| Model | Brush Description | Dates | Photos |
|---|---|---|---|
| 6277 | 12" black plastic handle with red ring stamped with Weber grill logo | 2021-2026 | |
| 6278 | 18" black plastic handle with red ring stamped with Weber grill logo | 2021-2026 | |

| 6463 | 12" bamboo handle with silver metal scraper on the back branded with Weber logo name | 2011-2021 | |
| 6464 | 18" bamboo handle with silver metal scraper on the back branded with Weber logo name | 2011-2021 | |

| 6493 | 21" black plastic handle with black ring stamped with Weber grill logo and metal binder with Weber grill logo | 2013-2021 | |
| 6494 | 12" black plastic handle with black ring stamped with Weber grill logo | 2013-2021 | |

14.    **Defect at issue:**  As stated by Defendant: "Small metal wire bristles can detach from the brushes, stick to the grill or food, posing an ingestion hazard and risk of serious internal injuries that could require surgery."

15. The Defect affects all of the Products at issue. Defendant and the CPSC have stated that "[c]onsumers should immediately stop using the recalled grill brushes[.]"

16. The cause of the Defect is the same for all of the products at issue.

17. **Relevant time period:** All of the omissions and misrepresentations at issue here were uniformly and consistently made at all times during the last four years, at least. There have been no material changes to the product packaging or other consumer facing materials during the relevant period.

18. **The omissions and misrepresentations:** Defendant described the Products as grill brushes that were the ideal cooking brush for removing grease and debris from grills. The Products were advertised as being suitable for use as a grill brushes. These representations were made everywhere the Products were sold, including online and on the Products' packaging in brick-and-mortar stores. However, these representations were false and misleading, as the Product were not suitable for use as grill brushes. Defendant failed to disclose that the metal bristles could "detached from the brushes, stick to the grill or food," and posed and "an ingestion hazard." There is no warning of any kind anywhere on the Products' labels, on websites where the Products are sold, or the Products themselves.

19. The omission and misrepresentations pertain to an unreasonable safety hazard that reasonable consumers consider to be material.

20. Plaintiff and class members would not have bought the Products, or would not have bought them on the same terms, if the Defect had been disclosed. The materiality of the Defect also is demonstrated by the existence of the recall.

21. Defendant did not disclose the Defect on the product packaging or labeling or any other customer-facing document or display. Retailers' sales personnel and customer service representatives did not disclose the Defect either.

22. At the time of purchase, Plaintiff and class members did not know and did not have reason to know that the Products were defective. Defendant had exclusive knowledge of that fact.

23. Defendant made partial representations to Plaintiff and class members, while suppressing the safety defect. Specifically, Defendant marketed the Products as suitable for use as grill brushes, while knowing that those representations were not true and failing to disclose the Defect.

24. **Defendant's Pre-sale Knowledge of the Defect**: Defendant was aware of the defect at the time of sale. Indeed, it took numerous complaints regarding the Defect and injuries, before Defendant finally issued a recall.

25. Before the products were first launched, Defendant knew about the defect as a result of pre-release testing.

26. After launching the products, Defendant monitored a variety of sources of information to detect signs of defects. These sources of information include warranty claim data, customer complaints to Defendant, replacement part data, field reports, and CPSC correspondence. Defendant knew that for every complaint made, there is a statistical likelihood that there were many more unreported incidents, and Defendant made projections about the likely manifestation rate and future warranty claims based on the number of known complaints.

27. The customer complaints about the Products put Defendant on notice of the Defect and contributed to its pre-sale knowledge of the Defect, because the defect is the same or substantially similar in all material respects. The number of complaints about the Products was

unusually high relative to the total number of products sold. The fact that so many consumers made similar complaints indicated that the complaints were not the result of user error or anomalous incidents, but instead a systemic problem with the Products. The reports and complaints from consumers were similar enough to put Defendant on notice that the incidents described were the result of a defect, and the Products were experiencing unusually high levels of complaints about the defect. And yet, Defendant waited until it had at least 38 reports of the defect, and at least four reports of injuries requiring medical intervention, before issuing its Recall.

28. Defendant also monitored and would have known about consumer complaints to the CPSC. When a consumer posts a complaint on the CPSC website, all of the relevant information provided to the CPSC is automatically sent via email to the manufacturer and retailers. Monitoring complaints to the CPSC is standard industry practice that serves as an early warning mechanism to spot defects that cause safety hazards, and Defendant adheres to that practice.

29. For instance, a July 4, 2012 report on CPSC's website shows that a consumer reported that "[a] metal bristle from a Weber grill brush dislodged and ended up in meat on grill. The metal bristle got stuck in mouth which was painful. Removed before swallowing and potentially doing further damage to intestines..."

30. A September 29, 2015 report to the CPSC reported that while "eating a hamburger grilled on a home grill I found a wire bristle in my mouth. We had cleaned the grill prior to cooking with a Weber grill brush. The brush had been recently purchased at a local hardware store. Upon closer examination of the brush we discovered another wire that became easily dislodged with a gentle tug."

31.     Similarly, an October 26, 2025 report stated: "Have been using Weber metal bristle grill grate cleaning brush and pieces of the bristles are breaking off. Very concerning situation. I do not know at this point if we have ingested any of these bristle parts."

32.     The CPSC and Defendant received numerous of similar complaints between 2011 and 2025.  Taking the CPSC complaints, together with the complaints reported by Defendant, it is clear that Defendant had knowledge of the defect yet continued to sell the Products to consumers just the same.

**No Adequate Remedy At Law:**

33.     Plaintiff and members of the putative classes are entitled to equitable relief because no adequate remedy at law exists.

34.     Legal remedies are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief.

35.     Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages.

36.     Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money Defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Plaintiff seeks non-restitutionary disgorgement of profits in connection with their unjust enrichment claims.

37. Legal claims for damages are not equally certain as restitution because equitable claims entail few elements.

38. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

**The Recall Does Not Render This Lawsuit Moot:**

39. The recall does not render this lawsuit moot because it does not provide all of the same relief available in this lawsuit.

40. Under the recall, Defendant will only provide a replacement "cool" grill brush made by Defendant. No cash refunds are provided, partial or otherwise. These options are not viable for people like Plaintiff who no longer trust the reliability of Defendant's products and do not wish to continue to do business with them, or those who no longer have the Products because they disposed of it due to the defect.

41. The recall was only briefly publicized and in a very limited manner. Therefore, many eligible class members remain unaware of it, and the response rate has been low. The amount and reach of the publicity concerning the notice of recall was not comparable to the typical notice provided in a class action.

**CLASS ALLEGATIONS**

42. *Class Definition*: Plaintiff brings this action on behalf all people in the following classes and subclasses (collectively referred to as "Class Members"):

    a. <u>Nationwide Class</u>: all people in the United States who purchased one of the Products.

    b. <u>California Subclass</u>: all people who purchased a subject Product in California.

43. Each of the above class definitions is a placeholder that "may be altered or amended before final judgment." Fed. Civ. P. 23(c)(1)(C). Subject to additional information obtained

through further investigation and discovery, the foregoing class definitions may be expanded or narrowed by amendment or in the motion for class certification, including through the use of multi-state subclasses to account for material differences in state law, if any.

44. Excluded from the putative classes are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family. Also excluded are any claims for personal injury.

45. *Numerosity.* Members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, each Class or Subclass includes thousands of consumers. The precise number of Class Members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant, its retailers, its agents, or other means.

46. ***Commonality and Predominance***. Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members. Common legal and factual questions include, but are not limited to:

    a. Whether Defendant knew or should have known of the Defect at issue in this case, and if so, when it discovered the Defect;

    b. Whether knowledge of the Defect at issue in this case would be important to a reasonable person, because, among other things, it poses an unreasonable safety hazard;

    c. Whether Defendant failed to disclose and concealed the existence of the Defect from potential customers; and

    d. Whether Defendant's conduct, as alleged herein, violates the consumer protection laws asserted here.

47. ***Typicality.*** Plaintiff's claims are typical of the claims of the Classes in that Plaintiff and the Classes sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant's failure to inform Plaintiff and all others similarly situated that the products at issue here can be dangerous.

48. ***Adequacy***. Plaintiff will fairly and adequately protect the interests of Class members. Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Classes. Plaintiff has no interests that are antagonistic to those of the Classes. Plaintiff has no past or present financial, employment, familial, or other relationship with any of the attorneys in this case that would create a conflict of interest with the proposed class members.

49. ***Superiority***. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions of individual actions are economically impractical for members of the Classes; the Classes are readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

50. Without a class action, Defendant will continue a course of action that will result in further damages to the Plaintiff and Members of the Classes and will likely retain the benefits of its wrongdoing.

## FIRST CAUSE OF ACTION
### Violations of California's Unfair Competition Law ("UCL")
### Cal. Bus. & Prof. Code §§ 17200, *et seq.*

51. Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

52. Plaintiff brings this cause of action individually and on behalf the California

Subclass.

53.     California Business & Professions Code Section 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

54.     Defendant acted with knowledge and intent.

55.     Plaintiff alleges a claim under all three prongs of the UCL.

56.     As alleged above, Defendant engaged in fraudulent conduct that had the tendency or capacity to deceive or confuse reasonable consumers.

57.     Defendant's conduct also constitutes "unfair" business acts and practices within the meaning of the UCL, in that its conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous. Defendant's violation of consumer protection and unfair competition laws resulted in harm to consumers.

58.     Plaintiff also alleges a violation under the "unlawful" prong of the UCL because Defendant's conduct violated consumer protection laws and the common law as set forth herein.

59.     As a direct and proximate result of Defendant's unfair and deceptive practices, Plaintiff and the other members of the California Subclass have suffered out-of-pocket losses.

60.     Plaintiff and Class Members have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here.

61.     Plaintiff seeks all relief available under the UCL.

**SECOND CAUSE OF ACTION**
**Violations of California's Consumer Legal Remedies Act ("CLRA")**
**Cal. Civ. Code §§ 1750, *et seq.***

62.     Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

63.     Plaintiff brings this cause of action individually and on behalf of the California

Subclass.

64. Defendant is a "person" as defined by California Civil Code § 1761(c).

65. Plaintiff and the other Class Members are "consumers" within the meaning of California Civil Code § 1761(d).

66. For the reasons alleged above, Defendant violated California Civil Code § 1770(a)(5)(7) and (9).

67. Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business.

68. Defendant acted with knowledge and intent.

69. Defendant engaged in conduct that had the tendency or capacity to deceive or confuse reasonable consumers.

70. With respect to restitution under the CLRA claim, Plaintiff alleges in the alternative that he lacks an adequate remedy at law for the reasons already alleged above.

71. As a result of Defendant's misconduct, Plaintiff and other Class Members have suffered monetary harm.

72. Plaintiff seeks all relief available under this cause of action, except damages. Plaintiff may amend this claim at a later time to add a damages claim.

### THIRD CAUSE OF ACTION
#### Unjust Enrichment

73. Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

74. Plaintiff brings this cause of action individually and on behalf of the Nationwide Class and California Subclass.

75. To the extent required, Plaintiff asserts this cause of action in the alternative to legal claims, as permitted by Rule 8.

76. The unjust enrichment claims are premised on Defendant's pre-sale activities and are unrelated to its post-sale obligations to provide repairs.

77. Plaintiff and the Class Members conferred a benefit on Defendant in the form of the gross revenues Defendant derived from the money Plaintiff and Class Members paid to Defendant.

78. Defendant knew of the benefit conferred on it by Plaintiff and the Class Members.

79. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and the Class Members' purchases of the Products, which retention of such revenues under these circumstances is unjust and inequitable because Defendant omitted that the Products were dangerous. This caused injuries to Plaintiff and Class Members because they would not have purchased the Products or would have paid less for them if the true facts concerning the Products had been known.

80. Defendant accepted and retained the benefit in the amount of the gross revenues it derived from sales of the Products.

81. Defendant has profited by retaining the benefit under circumstances which would make it unjust for Defendant to retain the benefit.

82. Plaintiff and the Class Members are, therefore, entitled to restitution in the form of the revenues derived from Defendant's sale of the Products.

83. As a direct and proximate result of Defendant's actions, Plaintiff and Class Members have suffered in an amount to be proven at trial.

84. Plaintiff and the Class Members have suffered an injury in fact and have lost money as a result of Defendant's unjust conduct.

85.     Plaintiff and the Class Members lack an adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

## FOURTH CAUSE OF ACTION
### Fraud by Omission / Intentional Misrepresentation

86.     Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

87.     Plaintiff brings this cause of action individually and on behalf of the Nationwide Class and California Subclass.

88.     This claim is based on fraudulent omissions and misrepresentations concerning the safety, reliability, and durability of the Products. As discussed above, Defendant failed to disclose that the Products had a dangerous defect, while advertising that the Products were suitable for use as grill brushes.

89.     The false and misleading omissions and misrepresentations were made with knowledge of their falsehood. Defendant as the manufacturer and distributors routinely undergoes product testing, and must have known about the Defect prior to sale. Nonetheless, Defendant continued to sell the defective Products to unsuspecting consumers.

90.     The false and misleading omissions and misrepresentations were made by Defendant, upon which Plaintiff and Class Members reasonably and justifiably relied, and were intended to induce and actually induced Plaintiff and Class Members to purchase the Products.

91.     The fraudulent actions of Defendant caused damage to Plaintiff and Class Members, who are entitled to damages and punitive damages.

92.     Plaintiff seeks all relief available under this cause of action.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the proposed class, prays for the following relief:

A. Certification of the proposed classes;

B. Appointment of Plaintiff as representative of the classes;

C. Appointment of undersigned counsel as counsel for the classes;

D. A declaration that Defendant's actions complained of herein violated the statutes referenced herein;

E. For an order finding in favor of Plaintiff and class members on all counts asserted herein;

F. For an award of injunctive or other equitable relief as is necessary to protect the interests of Plaintiff and the class members, including, *inter alia*, an order prohibiting Defendant from engaging in the unlawful acts described above;

G. For actual, compensatory, statutory, nominal, and/or punitive damages in amounts to be determined by the Court and/or jury;

H. For prejudgment interest on all amounts awarded;

I. For an order of restitution and all other forms of equitable monetary relief;

J. For an order awarding Plaintiff and class members their reasonable attorney fees, expenses, and costs of suit.

K. Orders granting such other and further relief as the Court deems necessary, just, and proper.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

**SMITH KRIVOSHEY, PC**

Date: March 9, 2026

*/s/ Brittany S. Scott*
Brittany S. Scott*
Smith Krivoshey, PC
28 Geary Street, Suite 650, No. 1507
San Francisco, CA 94108
Telephone: (415) 839-7077
Facsimile: (888) 410-0415
E-Mail: Brittany@skclassactions.com

*Attorneys for Plaintiff*

*Generally Admitted