**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

RON CHALLIS, *et al.*, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

WEBER-STEPHEN PRODUCTS LLC,

Defendant.

Case No.: 1:26-cv-02612

Judge: Joan H. Lefkow

## CONSOLIDATED AMENDED COMPLAINT

Plaintiffs Ron Challis, Jacqueline Dushaj, Steve Hess, Christopher Hose, and Geoffrey vonMaucher (collectively, "Plaintiffs") bring this action on behalf of themselves, and all others similarly situated ("Class" or "Classes")[1] against Weber-Stephen Products LLC ("Defendant") based on personal knowledge as to themselves, the investigation of their counsel, and on information and belief as to all other matters.

## NATURE OF ACTION

1. This case concerns a deceptively dangerous outdoor cooking product and Defendant's delayed, inefficient, and inadequate recall efforts.

2. After selling roughly 3.2 million Weber-branded metal bristle grill brushes (the "Products"),[2] marketed for use on hot and cold grills, and numerous reports of injuries, Defendant

---

[1] Plaintiffs bring class action claims on behalf of the Nationwide Class, the California Class, the New Jersey Class, and the New York Class which are herein referred to collectively as the "Class" or "Classes," and the Members of the Classes are referred to as the "Class Members."

[2] The Products include all Weber-branded metal bristle grill brushes bearing model numbers 6277, 6278, 6463, 6464, 6493, and 6494.

finally announced a nationwide recall (the "Recall")[3] instructing its customers to stop using the Products immediately because the Product's **small metal bristles can and have detached from the brush and stuck to the grill or food ("Defect"), posing a risk of ingestion of the metal bristle** and serious injury.

3. Indeed, scores of consumers have reported their experience with the Defect directly to Defendant, including reports of consumers who swallowed the bristles and were required to seek medical treatment far before the Recall was announced.

4. Shockingly, in spite of this horrific danger presented by the Product, **Defendant refuses to provide any refund to consumers or a comparable non-defective replacement product** and instead, **only offers inadequate replacement—nylon brushes that fail to perform the same functions as the Product** that Plaintiffs and Class Members purchased. This is because the nylon brushes may only be used when the grill is cold (as compared to when the grill is hot). Further, the replacement brushes with nylon bristles are not only inadequate substitutes, but they also fail to remedy the harm and hazards caused by the Defect in the Products, because nylon brushes can come with the same risks of ingestion of detached bristles and new risks such as melting of the bristles. This is a case of a company seeking to protect the bottom line at all costs.

5. On February 26, 2026, Defendant and the U.S. Consumer Product Safety Commission ("CPSC") announced the recall of roughly 3.2 million Weber-branded metal bristle grill brushes. Consumers were warned to "immediately stop using the recalled grill brushes" because the Products' "[s]mall metal wire bristles can detach from the brushes."

---

[3] https://www.cpsc.gov/Recalls/2026/Weber-Recalls-Over-3-2-Million-Metal-Wire-Bristle-Grill-Brushes-Due-to-Ingestion-Hazard

6. The Recall notice stated that "Weber is aware of **at least 38 reports and reviews where small wire bristles detached from the grill brushes,** including **four reports of consumers who swallowed metal bristles and sought medical treatment to remove the bristles from their digestive tract or throat."**

7. Defendant refuses to refund customers, including Plaintiffs and the Class, who purchased and paid a premium for the Products. Instead, Defendant implemented a wholly deficient Recall that fails to offer any monetary relief or a comparable, non-defective replacement product.

8. Consumers only have one option – discard the recalled hot grill brushes and obtain a cold cleaning nylon bristle grill brush "replacement." However, the replacement is not a sufficient substitute for the Products as the Products were designed for use on hot grills to easier enable cleaning of heavily used and/or dirty grills. The replacement product may only be used on a grill that is cold, because they may otherwise melt when used. Consumers did not bargain for a grill where the bristles could detach and injure them without notice. Nor did they bargain for a brush which may only be used when the grill is cold.

9. By design, the Recall received very little publication, with the result that the response rate has been low.

10. Defendant's sole offer of a non-comparable substitute replacement product guarantees that customers, who have lost faith in all of Defendant's products, and/or those who do not want to risk being injured by the same or similar Defect and resulting ingestion hazards presented by the nylon brushes, are left with no recourse. Further, consumers whose Products were discarded are also left without any recourse at all. This approach benefits Defendant by minimizing the cost and burden of the Recall.

11. Furthermore, despite its knowledge of the dangerous Defect and contrary to its admission of the Defect in its Recall, Defendant carefully crafted its marketing of the Product to capitalize on consumer's demand for grill brushes that can safely clean hot grills and disseminated this marketing nationwide for over a decade.

12. Specifically, Defendant's marketing includes affirmative misrepresentations made directly to consumers about the Product's quality, utility, and safety as well as its suitability for its regular and intended use on a hot grill, along with Defendant's material omissions of the Defect and resulting ingestion hazard. Defendant made its uniform marketing directly to consumers nationwide before and at the point of purchase, throughout its marketing channels, including on its website and the websites of its authorized retailers.

13. Plaintiffs are filing this class action lawsuit to seek all available relief to consumers, to raise awareness that Defendant's Products contain the Defect and associated hazard, and to "encourage companies to take greater care in avoiding the production [and sale] of hazardous products in the first place." *Kaupelis v. Harbor Freight Tools USA, Inc.*, 2019 WL 6998661 at *10 (C.D. Cal. Oct. 9, 2019) (quoting *In re Mattel, Inc.*, 588 F. Supp. 2d 1111, 1115-16 (C.D. Cal. 2008)).

## PARTIES

### Plaintiffs

14. **Plaintiff Ron Challis** is a resident of Solvang, California. Plaintiff Challis purchased a Weber-branded metal bristle grill brush that is part of the Recall from Valley Hardware in Solvang, California in approximately the Spring of 2023.

15. Before purchasing the Product, Plaintiff Challis considered Weber a reputable company with a strong reputation for producing high quality grill products and believed these

Products would be no different. Additionally, Plaintiff Challis reviewed the Product's item details, descriptions, product specifications and features before purchasing the Product. Plaintiff Challis relied on Defendant's implied representations that the Product was safe and suitable for use on hot or cold grills.

16. Defendant's materials failed to disclose the existence of the Defect at issue in this action prior to or at the time of purchase. Neither the Products' packaging, labeling, or any other information surrounding the Product disclosed or suggested in any way that the Product contained the Defect.

17. Plaintiff Challis used the Product to clean his grill, including when the grill was hot. When using the Product, Plaintiff Challis experienced the Defect. Due to the presence of the Defect in his Product, Plaintiff Challis stopped using the Product.

18. If the Product's labeling, packaging, or advertising had disclosed the Defect, Plaintiff Challis would not have purchased the Product, or would not have purchased the Product on the same terms.

19. The Recall is ineffective as it does not provide a monetary refund to Plaintiff Challis but rather allows him to receive a replacement brush that is not comparable to the Product that he purchased.

20. **Plaintiff Jacqueline Dushaj** is a resident of Middletown, New York. Plaintiff Dushaj purchased a Weber-branded metal bristle grill brush that is part of the Recall from a hardware store in Middletown, New York in approximately the Spring or Summer of 2024.

21. Before purchasing the Product, Plaintiff Dushaj considered Weber a reputable company with a strong reputation for producing high quality grill products and believed these Products would be no different. Additionally, Plaintiff Dushaj reviewed the Product's item details,

descriptions, product specifications and features before purchasing the Product. Plaintiff Dushaj relied on Defendant's implied representations that the Product was safe and suitable for use on hot or cold grills.

22. Defendant's materials failed to disclose the existence of the Defect at issue in this action prior to or at the time of purchase. Neither the Products' packaging, labeling, or any other information surrounding the Product disclosed or suggested in any way that the Product contained the Defect.

23. Plaintiff Dushaj used the Product to clean her grill, including when the grill was hot. When using the Product, Plaintiff Dushaj experienced the Defect. Due to the presence of the Defect in her Product, Plaintiff Dushaj stopped using the Product.

24. If the Product's labeling, packaging, or advertising had disclosed the Defect, Plaintiff Dushaj would not have purchased the Product, or would not have purchased the Product on the same terms.

25. The Recall is ineffective as Plaintiff Dushaj disposed of the Product she purchased, prior to the Recall, after finding metal bristles in her food and on her grill grate. As such, Plaintiff Dushaj cannot obtain a monetary refund and she is ineligible to receive the noncomparable replacement brush being offered through the Recall.

26. **Plaintiff Steve Hess** is a citizen of Briarcliff Manor, New York. Plaintiff Hess purchased a Weber-branded metal bristle grill brush that is part of the Recall from Home Depot in Hawthorne, New York in approximately July 2025.

27. Before purchasing the Product, Plaintiff Hess considered Weber a reputable company with a strong reputation for producing high quality grill products and believed these Products would be no different. Additionally, Plaintiff Hess reviewed the Product's item details,

descriptions, product specifications and features before purchasing the Product. Plaintiff Hess relied on Defendant's implied representations that the Product was safe and suitable for use on hot or cold grills.

28. Defendant's materials failed to disclose the existence of the Defect at issue in this action prior to or at the time of purchase. Neither the Products' packaging, labeling, or any other information surrounding the Product disclosed or suggested in any way that the Product contained the Defect.

29. Plaintiff Hess used the Product to clean his grill, including when the grill was hot. When using the Product, Plaintiff Hess experienced the Defect. Due to the presence of the Defect in his Product, Plaintiff Hess stopped using the Product.

30. If the Product's labeling, packaging, or advertising had disclosed the Defect, Plaintiff Hess would not have purchased the Product, or would not have purchased the Product on the same terms.

31. The Recall is ineffective as it does not provide a monetary refund to Plaintiff Hess but rather allows him to receive a replacement brush that is not comparable to the Product that he purchased.

32. **Plaintiff Christopher Hose** is a resident of Pemberton, New Jersey. Plaintiff Hose purchased a Weber-branded metal bristle grill brush that is part of the Recall from Target in Burlington, New Jersey in approximately July 2024.

33. Before purchasing the Product, Plaintiff Hose considered Weber a reputable company with a strong reputation for producing high quality grill products and believed these Products would be no different. Additionally, Plaintiff Hose reviewed the Product's item details, descriptions, product specifications and features before purchasing the Product. Plaintiff Hose

relied on Defendant's implied representations that the Product was safe and suitable for use on hot or cold grills.

34. Defendant's materials failed to disclose the existence of the defect at issue in this action prior to or at the time of purchase. Neither the Products' packaging, labeling, or any other information surrounding the Product disclosed or suggested in any way that the Product contained the Defect.

35. Plaintiff Hose used the Product to clean his grill, including when the grill was hot. When using the Product, Plaintiff Hose experienced the Defect. Due to the presence of the Defect in his Product, Plaintiff Hose stopped using the Product.

36. If the Product's labeling, packaging, or advertising had disclosed the Defect, Plaintiff Hose would not have purchased the Product, or would not have purchased the Product on the same terms.

37. The Recall is ineffective as it does not provide a monetary refund to Plaintiff Hose but rather allows him to receive a replacement brush that is not comparable to the Product that he purchased.

38. **Plaintiff Geoffrey vonMaucher** is a resident of Schenectady, New York. Plaintiff vonMaucher purchased a Weber-branded metal bristle grill brush that is part of the Recall from Lowe's in Glevnville, New York in approximately April or May of 2024.

39. Before purchasing the Product, Plaintiff vonMaucher considered Weber a reputable company with a strong reputation for producing high quality grill products and believed these Products would be no different. Additionally, Plaintiff vonMaucher reviewed the Product's item details, descriptions, product specifications and features before purchasing the Product. Plaintiff

vonMaucher relied on Defendant's implied representations that the Product was safe and suitable for use on hot or cold grills.

40. Defendant's materials failed to disclose the existence of the defect at issue in this action prior to or at the time of purchase. Neither the Products' packaging, labeling, or any other information surrounding the Product disclosed or suggested in any way that the Product contained the Defect.

41. Plaintiff vonMaucher used the Product to clean his grill, including when the grill was hot. When using the Product, Plaintiff vonMaucher experienced the Defect. Due to the presence of the Defect in his Product, Plaintiff vonMaucher stopped using the Product.

42. If the Product's labeling, packaging, or advertising had disclosed the Defect, Plaintiff vonMaucher would not have purchased the Product, or would not have purchased the Product on the same terms.

43. The Recall is ineffective as it does not provide a monetary refund to Plaintiff vonMaucher but rather allows him to receive a replacement brush that is not comparable to the Product that he purchased.

**Defendant**

44. Defendant Weber-Stephen Products LLC is a Delaware corporation, with its registered agent and principal place of business located in Palatine, Illinois.

45. Upon information and belief, Defendant or its subsidiaries were involved in the design, manufacturing, marketing, distribution, and/or sale of the Products.

46. On information and belief, the Products were conceived, designed, prepared and/or approved by Defendant and were disseminated by Defendant and its agents from its headquarters, alleged herein.

47. On information and belief, in committing the wrongful acts alleged herein, Defendant, in connection with its subsidiaries, affiliates, and/or other related entities and their employees, planned, participated in and furthered a common scheme to induce members of the public to purchase the Products by means of false, misleading, deceptive and/or fraudulent representations, and Defendant participated in the making of such representations in that it disseminated those misrepresentations or caused them to be disseminated.

## JURISDICTION AND VENUE

48. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) ("CAFA") because this case is a class action where the aggregate claims of all members of the proposed Class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed Class is citizen of a state different from Defendant. *City of E. St. Louis, Ill. v. Netflix, Inc.*, 83 F.4th 1066, 1071 (7th Cir. 2023) (an LLC's citizenship in a CAFA case "is treated like a corporation under § 1332(c)(1): one citizenship for the state of its principal place of business, another for the state of its organization, and the investors' citizenship ignored.")

49. This Court has personal jurisdiction over Defendant because it conducts and transacts business in the state of Illinois and is headquartered in Palatine, Illinois such that it has significant, continuous, and pervasive contacts with the State of Delaware.

50. Venue is proper pursuant to 28 U.S.C. § 139 because Defendant's principal place of business is in this District and Defendant transacts substantial business in this District. Additionally, a considerable part of the events and omissions giving rise to the claims occurred in this District.

## COMMON FACTUAL ALLEGATIONS

### I. The Dangerously Defective Products.

51. The Products were sold nationwide directly by Defendant on Weber.com and at major retailers including but not limited to Lowe's, Home Depot, Ace Hardware, and Target, and online at Amazon from 2011 through 2026 for between $10 to $17. The Products are manufactured by Defendant in China and Cambodia.

52. Defendant sold approximately 3.2 million units in the United States including the following models:

| Model | Brush Description | Dates | Photos |
|---|---|---|---|
| 6277 | 12" black plastic handle with red ring stamped with Weber grill logo | 2021-2026 |  |

| | | | |
|---|---|---|---|
| 6278 | 18” black plastic handle with red ring stamped with Weber grill logo | 2021-2026 |  |
| 6463 | 12” bamboo handle with silver metal scraper on the back branded with Weber logo name | 2011-2021 |  |
| 6464 | 18” bamboo handle with silver metal scraper on the back branded with Weber logo name | 2011-2021 |  |

| | | | |
|---|---|---|---|
| 6493 | 21" black plastic handle with black ring stamped with Weber grill logo and metal binder with Weber grill logo | 2013-2021 |  |
| 6494 | 12" black plastic handle with black ring stamped with Weber grill logo | 2013-2021 |  |

## II. <u>Defendant's Deceptive Brand and Product Marketing Representations and Omissions</u>

53. Defendant is a sophisticated and leading manufacturer of various types of grills for outdoor cooking as well as grilling accessories intended to enhance the grilling experience, and has been selling grilling products to consumers nationwide for over 70 years.

54. Through highly sophisticated marketing and advertising, Defendant consistently misleads consumers about its Products, by making the quality, utility, and safety of all of its product lines a central component of its brand image.

55. Defendant has worked very hard to convince consumers that its Weber-branded products are a cut above the rest when it comes to quality, utility, and safety. For instance, Defendant touts its products' quality on its website, weber.com, that "[a]t Weber, we proudly stand behind our grilling accessories and our quality controls."

56. As part of its vast inventory of grilling products, Defendant sells brushes that can be used before or after grilling to enable consumers to better remove baked-on food, grease and debris. Defendant's Products are grill brushes with metal wire bristles and are marketed as being safe and suitable for use on hot or cold grills and are purportedly effective at cleaning off food, grease and debris from grills used to cook food for people to eat.

57. To capitalize on consumers' desire for grill brushes that are safe and suitable for use on hot or cold grills and to gain a competitive advantage in the market, Defendant carefully crafted its marketing of the Product, which includes affirmative misrepresentations made directly to consumers about the Product's quality, utility, and safety as well as its suitability for its regular and intended use on a hot grill as well as Defendant's material omissions of the Defect and resulting ingestion hazard.

58. Defendant disseminated its uniform marketing directly to consumers nationwide before and at the point of purchase, throughout its marketing channels, including on its website and the websites of its authorized retailers.

59. Defendant goes to these great lengths to persuade consumers that its Products are suitable for their advertised use and of a certain quality because it knows that these attributes are essential parts of its consumers' purchasing decisions.

60. For example, on its official website Weber advertised the 12" Three-Sided Grill Brush – Model No. 6277 – subject to the Recall as a reliable and effective cleaning tool,

highlighting features such as a "3-sided bristle brush design [that] easily cleans larger areas quickly," a "comfort-hold handle for leverage when cleaning stuck on food," a 12-inch length to "reach all areas of the grate," and a "2-year warranty."[4]

61. The product description emphasizes the brush's ability to remove grease and debris and clean grill grates before each use so that the grill "lasts longer."[5]

**GRILL BRUSH**

12" Three-Sided

This three-sided grill brush is made to remove grease and debris from cooking grates of all sizes. The handle design provides a secure grip when brushing off stuck-on food or cleaning tight spaces. Use this grill brush to clean your grates before each use so that your grill lasts longer and your next meal is as delicious as the one before.

- 3-sided bristle brush design easily cleans larger areas quickly
- Shorter sides clean edges and dislodge debris between grates
- Comfort-hold handle for leverage when cleaning stuck on food
- 12 in. long to reach all areas of the grate
- Loop to hang brush for easy storage
- 2-year warranty

Read Less

PART NUMBER: #6277

62. Furthermore, on its official website for the 12" Three-Sided Grill Brush – Model No. 6277 – subject to the Recall, Weber featured a video "How to Clean Your Gas Grill." In that video, Weber instructed consumers to preheat their grill for "10-15 min or until 500º F" and then "use stainless steel brush to scrub in line with grate:"[6]

---

[4] https://web.archive.org/web/20251013125953/https://www.weber.com/US/en/accessories/grill-cleaning/grill-brush-6277/6277.html
[5] *Id.*
[6] *Id.*









63. These representations alone and in combination with Defendant's brand marketing convey that the brush is safe and suitable for repeated ordinary use including use on a hot or cold grill. However, nowhere on the Product page does Defendant disclose the Defect.

64. Defendant's representations were made everywhere the Products were sold, including online and on the Products' packaging in brick-and-mortar stores.

65. However, these representations were false and misleading, as the Products were not safe nor suitable for use on a hot or cold grill or at all due to the Defect. Defendant failed to disclose that the metal bristles could "detached from the brushes, stick to the grill or food," and posed and "an ingestion hazard." There is no warning of any kind anywhere on the Products' labels, on websites where the Products are sold, or the Products themselves.

66. All of the omissions and misrepresentations at issue here were uniformly and consistently made at all times during the last four years, at least. There have been no material changes to the Products' packaging or other consumer facing materials during the relevant period.

67. The omission and misrepresentations pertain to an unreasonable safety hazard that reasonable consumers consider to be material.

68. Plaintiffs and Class members would not have bought the Products, or would not have bought them on the same terms, if the Defect had been disclosed. The materiality of the Defect also is demonstrated by the existence of the Recall.

69. Defendant did not disclose the Defect on the Products' packaging or labeling or any other customer-facing document or display. Retailers' sales personnel and customer service representatives did not disclose the Defect either.

70. At the time of purchase, Plaintiffs and Class members did not know and did not have reason to know that the Products were defective. Defendant had exclusive knowledge of that fact.

## II. The Products' Dangerous Defect.

71. Unbeknownst to reasonable consumers and contrary to Defendant's marketing, including Plaintiffs and the Class at the time of purchase, Defendant designed, manufactured, distributed, marketed, and/or sold the Products nationwide with a dangerous Defect.

72. The Defect uniformly present in Defendant's Products can and has resulted in a serious ingestion hazard because metal bristles can detach during ordinary and foreseeable use. Indeed, Defendant has confirmed the Products', "[s]mall metal wire bristles can detach from the brushes, stick to the grill or food, posing an ingestion hazard and risk of serious internal injuries that could require surgery."

73. Detached bristles are small, thin, and difficult to detect. They can and have become embed in grill grates and later adhered to food cooked on the grill. Thus, consumers can and have unknowingly ingested detached bristles. Indeed, ingestion of wire bristles can cause serious injuries and the need for emergency medical treatment or surgery.

74. The Defect exists in the Products when they come off the assembly line. Thus, the Defect affects all of the Products at issue, exists at the point of purchase, and results in a seriously dangerous ingestion hazard as described herein.

75. Indeed, the Products' Defect is so dangerous that Defendant and the CPSC have stated that all "[c]onsumers should immediately stop using the recalled grill brushes[.]"

76. In its design, manufacture, and/or production of the Products, Defendant failed to conduct the testing required to ensure its Products were safe and suitable for their intended purpose and/or conducted inadequate testing, which is not only contrary to its duties as a manufacturer of outdoor cooking products but is also inconsistent with its marketing and reasonable consumer expectations.

77. Safer alternative designs, including the use of different bristle materials that are capable of performing the Products' advertised and essential functions, including additional metal grill brushes as well as bamboo grill brushes currently sold by Defendant, without resulting in the dangerous ingestion hazard, were available to Defendant but not utilized.

78. Despite the availability and feasibility of these other reasonable alternatives, including the use of different designs and materials with regard to the Products' bristles, Defendant intentionally chose to design the Products with the Defect resulting in the dangerous ingestion hazard as detailed herein so that it could garner more market share at the expense of consumers.

79. As one of the industry leaders in the outdoor cooking products market, Defendant has the resources and learned institutional knowledge to properly and adequately test its Products before injecting it into the nationwide stream of commerce for use by consumers nationwide.

**III. Defendant's Longstanding Pre-sale Knowledge of the Defect.**

80. Prior to the design and introduction of the Products into the consumer marketplace, Defendant knew or should have known of the Defect and its resulting ingestion hazard. However, Defendant continued to market, sell, and profit from the defective Products for over a decade. Indeed, it took numerous complaints regarding the Defect and injuries before Defendant finally issued the Recall.

81. In fact, as the Recall notice states, at the time of the Recall, "Weber [wa]s aware of **at least 38 reports and reviews where small wire bristles detached from the grill brushes,** including **four reports of consumers who swallowed metal bristles and sought medical treatment to remove the bristles from their digestive tract or throat."**

82. Further, before the Products were first launched, Defendant knew about the Defect as a result of pre-release testing.

83. After launching the Products, Defendant monitored a variety of sources of information to detect signs of defects. These sources of information include warranty claim data, customer complaints to Defendant, replacement part data, field reports, and CPSC correspondence.

84. The customer complaints about the Products put Defendant on notice of the Defect and contributed to its pre-sale knowledge of the Defect, because the defect is the same or substantially similar in all material respects. The number of complaints about the Products was unusually high relative to the total number of products sold.

85. The fact that so many consumers made similar complaints indicated that the complaints were not the result of user error or anomalous incidents, but instead a uniform problem—the Defect—with the Products. This is also confirmed by the existence of the Recall and Defendant's admissions therein.

86. The reports and complaints from consumers regarding the same hazards detailed herein were sufficient to put Defendant on notice that the incidents described were the result of the Defect, and the Products were experiencing unusually high levels of complaints about the Defect. And yet, **Defendant waited until it had at least 38 reports of the Defect, and at least four reports of injuries requiring medical intervention**, before issuing its Recall.

87. Defendant also monitored and would have known about consumer complaints to the CPSC. When a consumer posts a complaint on the CPSC website, all of the relevant information provided to the CPSC is automatically sent via email to the manufacturer and retailers. Monitoring complaints to the CPSC is standard industry practice that serves as an early warning mechanism to spot defects that cause safety hazards, and Defendant adheres to that practice.

88. For instance, a July 4, 2012, report on CPSC's website shows that a consumer reported that "[a] metal bristle from a Weber grill brush dislodged and ended up in meat on grill.

The **metal bristle got stuck in mouth which was painful. Removed before swallowing and potentially doing further damage to intestines**...”[7]

89. An August 29, 2015, report to the CPSC reported that while “**eating a hamburger grilled on a home grill I found a wire bristle in my mouth**. We had cleaned the grill prior to cooking with a Weber grill brush. The brush had been recently purchased at a local hardware store. Upon closer examination of the brush we discovered another wire that became easily dislodged with a gentle tug.”[8]

90. Similarly, an October 26, 2025, report stated: “Have been using Weber metal bristle grill grate cleaning brush and pieces of the **bristles are breaking off. Very concerning situation**. I do not know at this point if we have ingested any of these bristle parts.”[9]

91. The CPSC and Defendant received numerous similar complaints between 2011 and 2025. Taking the CPSC complaints, together with the complaints reported by Defendant, it is clear that Defendant had knowledge of the Defect yet continued to sell the Products to consumers just the same.

## IV. No Adequate Remedy At Law.

92. Plaintiffs and members of the putative Classes are entitled to equitable relief because no adequate remedy at law exists.

93. Legal remedies are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief.

94. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award

[7] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1257243
[8] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1513154
[9] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=5702666

restitution even if it determines that Plaintiffs fail to sufficiently adduce evidence to support an award of damages.

95. Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money Defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Plaintiffs seek non-restitutionary disgorgement of profits in connection with their unjust enrichment claims.

96. Legal claims for damages are not equally certain as restitution because equitable claims entail few elements.

97. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

## V. The Recall Is Untimely and Inadequate and Does Not Render This Case Moot

98. As detailed above, February 26, 2026, the CPSC announced a recall of approximately 3.2 million Weber Metal Wire Bristle Grill Brushes, including models 6277, 6278, 6463, 6464, 6493, and 6494, which all contain the Defect (*e.g.*, small metal wire bristles can detach from the brushes, stick to the grill or food, posing an ingestion hazard and risk of serious internal injuries), sold since 2011.

99. However, the Recall is nothing short of perilous due to its inexcusable delay in notice and the wholly inadequate replacement—a free cold cleaning nylon bristle grill brush.

100. Despite having the capability and expertise to identify and mitigate the Defect, for years, Defendant failed to redesign the Products with bristles that would achieve the same advertised purpose but not contain the Defect leading the ingestion hazards detailed herein for over

a decade. This delay contributed to the continued availability of defective Products and the repeated injuries. Nevertheless, Defendant prioritized profit over the integrity and safety of the Products and pushed the Products into the marketplace with the Defect.

101. Further, the recall was only briefly publicized and in a very limited manner. Therefore, many eligible Class members remain unaware of it, and the response rate has been low. The amount and reach of the publicity concerning the notice of the Recall was not comparable to the typical notice provided in a class action. Defendant's actions and priorities in delaying the Recall clearly indicate a prioritization of profit over safety of consumers. Defendant made significant revenue from the sale of the Products, which were sold nationwide resulting in tens of millions of dollars in revenue.

102. Further, Defendant is not offering any refund option as part of the Recall, partial or otherwise. Instead, Defendant opts for an inadequate replacement. Indeed, the cold cleaning nylon bristle grill brush Defendant offers as a replacement products through its Recall is completely unacceptable as the nylon brushes are far from a one-to-one replacement. In fact, they cannot even be used in the same way as the Products and thus, are not an acceptable remedy for Plaintiffs and the Class. **Simply put, metal wire brushes, which can be used on hot grills, are not the same as cold cleaning nylon bristle brushes, which cannot be used on hot grills.**

103. Indeed, Weber has received numerous complaints regarding the inadequacy of the replacement product on its website weber.com.

104. On May 21, 2026, one user reported:

> I received this brush as a replacement and it is worthless. It doesn't do anything to clean the cast iron cooking grates and you don't make any stainless steel cooking grates for my model. It bends easily so you can't put much pressure on it. **Also, the plastic tines are coming out so I can't do anything but throw it away**.[10]

---

[10] https://www.weber.com/US/en/accessories/3400714.html

105. On May 19, 2026, another user complained it was a "[c]heap replacement for recalled grill brush" and that:

> This was a replacement for an awesome grill brush that was recalled. That thing was well made and a beast. No problem using on a hot grill. **This stupid grill brush melted when I used it.** In hindsight, yes maybe I should have paid attention to the plastic bristles and realized I couldn't use this on a hot grill. But who cleans a cold grill? Definitely a cheap recall replacement. Disappointed in Weber and will look elsewhere for my grilling needs.[11]

106. Likewise, on May 7, 2026, a user called the nylon brush an "Inferior Replacement" and stated:

> Like others, I received this brush as a replacement for the shorter wire version that was recalled. And I agree with other reviewers about the significantly different and less effective configuration relative to ability to clean (downgrade), the flimsy plastic bristles that have nowhere near the durability of metal (downgrade) and the lack of practicality related to instructing its use as a cold clean brush only (I think most know that cold cleaning is very difficult compared to cleaning a warm grille). I'll add that the density of the individual bristles is significantly less than on the wire version, and there are 38% fewer rows of bristles on this replacement than on the wire version (21 rows vs. 34). The only good thing I can say about it is that the handle is nice. It is worthless for cleaning the grill grates on my Weber "Q" grille. My respect for Weber products has decreased after receiving such a poorly designed and inferior replacement tool.[12]

107. Furthermore, the replacement brushes with nylon bristles are not only an inadequate substitute, but also fail to remedy the harm and hazards caused by the Defect in the Products, because, as shown by user reviews of the replacement brush, and by warnings on the packaging of competitor products, nylon brushes can come with the same risks of ingestion of detached bristles and new risks such as melting of the bristles.

108. Additionally, the replacement is not viable for people like Plaintiffs who no longer trust the reliability of Defendant's products and do not wish to continue to do business with them,

---

[11] *Id.*
[12] *Id.*

or those who no longer have the Products because they disposed of it due to the Defect until they can be assured of the truthfulness of Defendant's marketing practices and that their products are as promised.

109. Notably, the Recall does not provide all of the same relief available in this lawsuit.

110. Even more, the Recall is burdensome, with Defendant only allowing participation for those who still possess the Product, and requiring those consumers to download an app and then utilize the app to send an image of the brush, and also confirm destruction of the recalled Product in order to receive the replacement brush.

111. As noted by a study prepared for the CPSC, response rates for recalls are significantly reduced when it involves cognitive or task overload, and when they do not adequately motivate consumers to participate.[13]

112. Defendant intentionally chose the route more profitable for its business and assumingly less damaging to its branding and purported commitment to quality and effective Products.

113. Further, it is well known that product recalls generally have a low level of participation when consumers are not provided with a full remedy:

> Generally, firms should offer full remedy to achieve high recall effectiveness. While this seems like an obvious suggestion, our data shows that firms do not always follow that suggestion, even when the product and defect are the same. This is particularly puzzling as research also indicates that offering full remedy is the dominant strategy to preserve customer satisfaction after a product recall (*Mafael et al*., 2022) and protects firm reputation after the recall (*Germann et al*., 2014).[14]

---

[13] RECALL EFFECTIVENESS RESEARCH: A REVIEW AND SUMMARY OF THE LITERATURE ON CONSUMER MOTIVATION AND BEHAVIOR, (July 2003), CPSC.gov, https://www.cpsc.gov/s3fs-public/pdfs/foia_RecallEffectiveness.pdf, at page 25.
[14] Sascha Raithel, et al., Product recall effectiveness and consumers' participation in corrective actions, Journal of the Academy of Marketing Science (Aug. 19, 2023) (online at https://link.springer.com/article/10.1007/s11747-023-00967-x).

114. Despite the knowledge that full remedies lead to higher recall rates, and a serious risk the Defect presents and the additional risks the inadequate nylon replacement brush presents, Defendant offered a minimal remedy in its Recall, ensuring lower participation rates that will put more consumers at risk as the Products remain to be used for outdoor cooking throughout the country.

## TOLLING AND ESTOPPEL OF THE STATUTE OF LIMITATIONS

115. Defendant continuously manufactured, marketed, and/or sold the defective Products to unsuspecting customers. At all times relevant, it continuously represented that the Products were fit for their intended use.

116. By continuously repeating these false representations and failing to disclose that the Products contain the Defect, Defendant engaged in a continuing wrong sufficient to render inapplicable any statute of limitations that Defendant might seek to apply.

117. As the designer and/or manufacturer of the Products, Defendant had actual knowledge since at least 2011 that the Products are defective.

118. Defendant's knowledge of the Defect is evidenced by, amongst other things, the Recall Notice and reports of the Defect and ingestion hazard as a direct result of the Defect.

119. Thus, at all relevant times, Defendant indisputably possessed continuous knowledge of the Defect, and yet Defendant knowingly continued to allow the sale of the Products. Plaintiffs' and other Class Members' claims are therefore not time-barred.

120. Moreover, even after the Recall, there is no evidence that news of the Defendant Recall Notice or Defect reached all Product owners.

121. Plaintiffs and Class Members could not reasonably discover and could not know facts that would cause a reasonable person to suspect that Defendant knowingly failed to disclose

material information within its knowledge about the Defect to consumers in the United States and elsewhere. Therefore, no potentially relevant statute of limitations applies.

122. Throughout the time period relevant to this action, Defendant concealed from, and failed to disclose to, Plaintiffs and the other Class Members vital information about the Defect described herein.

123. Defendant kept Plaintiffs and the other Class Members ignorant of vital information essential to pursue their claims. As a result, neither Plaintiffs nor the other Class Members could have discovered the Defect, even upon reasonable exercise of due diligence.

124. Defendant had a duty to disclose to Plaintiffs and the Class Members the true quality and nature of the Products and that the Products have a uniform Defect.

125. Instead, Defendant continued to market the Products as suitable for their intended purpose to further profit from the sale of its popular Products and prevent Plaintiffs and other Class Members from seeking redress.

126. Plaintiffs and the other Class Members justifiably relied on Defendant to disclose the true nature of the Products they purchased and/or owned because the Defect was not discoverable by Plaintiffs and the other Class Members through reasonable efforts.

127. Defendant's affirmative acts of concealment, including its continued marketing of the defective Products as safe, reliable and fit for its intended purpose while possessing knowledge of the hazard, further support estoppel and tolling of any applicable limitations period.

## RULE 9(b) ALLEGATIONS

128. Although Defendant is in the best position to know what content it placed on its marketing materials during the relevant timeframe, and the knowledge that it had regarding the Defect and resulting safety hazards, and its failure to disclose them, to the extent necessary,

Plaintiffs have satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity.

129. **WHO:** Defendant made material misrepresentations and failed to adequately disclose material facts as detailed herein. Except as identified herein, Plaintiffs are unaware, and therefore unable to identify, the true names and identities of those individuals at Defendant who are responsible for such material misrepresentations and omissions.

130. **WHAT:** Defendant made material misrepresentations regarding the quality, utility, and safety of its Products and omitted and/or concealed the Defect. Specifically, Defendant represented to consumers, through the marketing and packaging of its Products, that the Products are safe and suitable for use on hot or cold grill and can be used as intended without hazards. These representations are false and misleading because the Products are not safe and contain the Defect.

131. **WHEN:** Defendant made the material misrepresentations, omissions, and nondisclosures detailed herein continuously at every point of purchase throughout the Class Period.

132. **WHERE:** Defendant's material misrepresentations, omissions, and non-disclosures detailed herein were made, inter alia, on the labels and packaging of its Products.

133. **HOW:** Defendant engaged in its deceptive marketing, including its affirmative representations and material omissions of the Defect and resulting safety hazards, in written and electronic form, through its marketing channels on its website and the websites of its authorized retailers.

134. **WHY:** Defendant engaged in the material misrepresentations, omissions, and nondisclosures detailed herein for the express purpose of inducing Plaintiffs and other reasonable consumers to purchase its Products based on the belief that the Products are safe and suitable for

use on hot or cold grills to use. Defendant profited by selling its Products to hundreds of thousands of unsuspecting consumers.

135. **INJURY:** Plaintiffs and Class Members purchased the Products when they otherwise would not have absent Defendant's misrepresentations and/or omissions, and, alternatively, paid more for the Products than they would have absent Defendant's misrepresentations and/or omissions.

## CLASS ALLEGATIONS

136. ***Class Definition*:** Plaintiffs bring this action on behalf all people in the following classes (collectively referred to as "Class Members"):

a. **Nationwide Class:** all people in the United States who purchased one of the Products.

b. **California Class**: all people who purchased a subject Product in California.

c. **New Jersey Class:** all people who purchased a subject Product in New Jersey.

d. **New York Class:** all people who purchased a subject Product in New York.

137. Each of the above class definitions is a placeholder that "may be altered or amended before final judgment." Fed. Civ. P. 23(c)(1)(C). Subject to additional information obtained through further investigation and discovery, the foregoing Class definitions may be expanded or narrowed by amendment or in the motion for class certification, including through the use of multi-state subclasses to account for material differences in state law, if any.

138. Excluded from the putative Classes are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the judge to whom this

action is assigned, members of the judge's staff, and the judge's immediate family. Also excluded are any claims for personal injury.

139. ***Numerosity***. Members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, each Class includes thousands of consumers. The precise number of Class Members and their identities are unknown to Plaintiffs at this time but may be determined through discovery. Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant, its retailers, its agents, or other means.

140. ***Commonality and Predominance***. Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members. Common legal and factual questions include, but are not limited to:

a. Whether the Products contain the Defect alleged herein;

b. Whether Defendant knew or should have known of the Defect at issue in this case, and if so, when it discovered the Defect;

c. Whether Defendant had a duty to disclose the Defect to consumers;

d. Whether Defendant's representations and omissions were misleading or deceptive;

e. Whether Defendant omitted or failed to disclose material information regarding the Products;

f. Whether knowledge of the Defect at issue in this case would be important to a reasonable person, because, among other things, it poses an unreasonable safety hazard;

g. Whether Defendant failed to disclose and/or concealed the existence of the Defect from potential customers;

h. Whether Defendant's conduct, as alleged herein, violates the consumer protection laws asserted here;

i. Whether Defendant's conduct was unfair or illegal;

j. Whether Plaintiffs and Class Members suffered economic injury;

k. Whether Defendant's conduct violates public policy; and

l. Whether Defendant was unjustly enriched.

141. ***Typicality.*** Plaintiffs' claims are typical of the claims of the Classes in that Plaintiffs and the Classes sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant's failure to inform Plaintiffs and all others similarly situated that the products at issue here can be dangerous.

142. ***Adequacy.*** Plaintiffs will fairly and adequately protect the interests of Class members. Plaintiffs have retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action on behalf of the Classes. Plaintiffs have no interests that are antagonistic to those of the Classes. Plaintiffs have no past or present financial, employment, familial, or other relationship with any of the attorneys in this case that would create a conflict of interest with the proposed Class Members.

143. ***Superiority***. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions of individual actions are economically impractical for members of the Classes; the Classes are readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner. Since the damages suffered by individual Class members are relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged, while an important public interest will be served by addressing the matter as a class action.

144. Without a class action, Defendant will continue a course of action that will result in further damages to the Plaintiffs and Members of the Classes and will likely retain the benefits of its wrongdoing.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Violations of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
(On behalf of Plaintiff Ron Challis, individually, and the California Class)

145. Plaintiff Ron Challis (referred to as "Plaintiff" for purposes of this Count) individually and on behalf of members of the California Class, adopts and incorporates by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

146. Plaintiff brings this cause of action individually and on behalf the California Class.

147. California Business & Professions Code Section 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

148. Defendant acted with knowledge and intent as described herein.

149. Plaintiff alleges a claim under all three prongs of the UCL.

150. As alleged above, Defendant engaged in fraudulent conduct, detailed herein, that had the tendency or capacity to deceive or confuse reasonable consumers.

151. Defendant's conduct also constitutes "unfair" business acts and practices within the meaning of the UCL, in that its conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous. Defendant's violation of consumer protection and unfair competition laws resulted in harm to consumers including Plaintiffs and the California Class.

152. Plaintiff also alleges a violation under the "unlawful" prong of the UCL because Defendant's conduct violated consumer protection laws and the common law as set forth herein.

153. As a direct and proximate result of Defendant's unfair and deceptive practices, Plaintiff and the other members of the California Class have suffered out-of-pocket losses.

154. Plaintiff and California Class Members have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here.

155. Plaintiff seeks all relief available under the UCL.

**SECOND CAUSE OF ACTION**
**Violations of California's Consumer Legal Remedies Act ("CLRA")**
**Cal. Civ. Code §§ 1750, *et seq.***
(On behalf of Plaintiff Ron Challis, individually, and the California Class)

156. Plaintiff Ron Challis (referred to as "Plaintiff" for purposes of this Count) individually and on behalf of members of the California Class, adopts and incorporates by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

157. Plaintiff brings this cause of action individually and on behalf of the California Class.

158. Defendant is a "person" as defined by California Civil Code § 1761(c).

159. Plaintiff and the other Class Members are "consumers" within the meaning of California Civil Code § 1761(d).

160. For the reasons alleged above, Defendant violated California Civil Code § 1770(a)(5)(7) and (9).

161. Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business.

162. Defendant acted with knowledge and intent as described herein.

163. Defendant engaged in conduct detailed herein that had the tendency or capacity to deceive or confuse reasonable consumers.

164. With respect to restitution under the CLRA claim, Plaintiff alleges in the alternative that he lacks an adequate remedy at law for the reasons already alleged above.

165. As a result of Defendant's misconduct, Plaintiff and other California Class Members have suffered monetary harm.

166. Plaintiff seeks all relief available under this cause of action, including monetary damages. Plaintiff also seeks injunctive and equitable relief for Defendant's violations of the CLRA, including an injunction to enjoin Defendant from the unlawful practices described above, a declaration that Defendant's conduct violates the CLRA, reasonable attorneys' fees and litigation costs, and any other relief the Court deems proper under the CLRA.

167. On March 6, 2026, a CLRA demand letter was sent to Defendant via certified mail with return receipt requested. This letter provided notice of Defendant's violation of the CLRA, for Plaintiff and the class, and demanded that Defendant correct the unlawful, unfair, false, and/or deceptive practices alleged herein.

## THIRD CAUSE OF ACTION
**Violations of New Jersey Consumer Fraud Act**
**NJ. Stat. Ann. § 56: 8-1, *et seq.***
(On behalf of Plaintiff Christopher Hose, individually, and on the New Jersey Class)

168. Plaintiff Christopher Hose (referred to as "Plaintiff" for purposes of this Count) individually and on behalf of members of the New Jersey Class, adopts and incorporates by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

169. Defendant's representations related to the Products, as described herein, are advertisements as defined by N.J. Stat. Ann. §56:8-1(a).

170. The Products sold by Defendant is merchandise as defined in N.J. Stat. Ann. §56:8-1(c).

171. Defendant is a person as defined in N.J. Stat. Ann. §56:8-1(d).

172. Defendant's labeling and advertisements contain untrue and materially misleading statements concerning Defendant's Products inasmuch as they misrepresent that the Products are safe for use on grills when that is not true.

173. The misrepresented qualities and suitability of the Products for their intended use is a material fact to Plaintiff and the New Jersey Class. Further, Defendant recognizes the materiality as evidenced by the Recall.

174. Defendant failed to disclose the Defect in the Products. The Defect was a material fact that Defendant omitted from the packaging of the Products. Consumers, including Plaintiff and the New Jersey Class, would not have purchased the Products, or would not have purchased the Products on the same terms had Defendant accurately disclosed the truth about the Products. Nor could Defendant charge as much for such Products, as the quality, utility, and safety as well as suitability for use on hot or cold grills are directly related to the amount of money retailers are able to charge for Products.

175. Defendant made these misrepresentations and material omissions intending that consumers would rely on them and purchase the Products. Plaintiff and the New Jersey Class were harmed by Defendant's misrepresentations and purchased the Products.

176. Plaintiff and New Jersey Class have suffered an ascertainable loss by paying more than they would have otherwise paid –and more than Defendant would have been able to charge – for the Products and by receiving Products with lower quality than they were promised by Defendant and thus, being denied the benefit of their bargain.

177. As a direct and proximate result of the deceptive, fraudulent, misleading, unfair, and unconscionable practices of the Defendant set forth above, Plaintiff and the New Jersey Class

are entitled to a refund of all moneys acquired by Defendant for violations of N.J. Stat. Ann. § 56:8-1, any other applicable legal or equitable relief, and treble damages.

## FOURTH CAUSE OF ACTION
**Violations of New York General Business Law ("GBL")**
**N.Y. Gen. Bus. Law § 349**
(On behalf of Plaintiffs Jacqueline Dushaj, Steve Hess, and Geoffery vonMaucher, individually, and on the New York Class)

178. Plaintiffs Jacqueline Dushaj, Steve Hess, and Geoffery vonMaucher, (referred to as "Plaintiffs" for purposes of this Count) individually and on behalf of members of the New York Class, adopt and incorporate by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

179. This Count is brought on behalf of Plaintiffs and the New York Class for violation of the New York General Business Law § 349 ("GBL § 349"), which prohibits deceptive acts or practices in the conduct of any business, trade or commerce in New York State.

180. GBL § 349(h) provides that "any person who has been injured by reason of any violation of this section may bring . . . an action to recover his actual damages or fifty dollars whichever is greater."

181. GBL § 349(h) further provides that "[t]he court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section," and that "[t]he court may award reasonable attorney's fees to a prevailing plaintiff."

182. GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state."

183. Defendant's design, manufacture, distribution, marketing, advertising, labeling, and/or sale of the Products constitutes "business, trade or commerce" under GBL §349(a).

184. Defendant's conduct violates GBL § 349 because Defendant engaged in the deceptive acts and practices described herein.

185. Defendant's violation of GBL §349 was willful and knowing.

186. Defendant misleadingly, inaccurately, and deceptively represents its Products to consumers.

187. Defendant's improper consumer-oriented conduct is misleading in a material way in that it, *inter alia*, induced Plaintiffs and other New York Class Members to purchase and/or pay a premium for Defendant's Products and to use the Products when they otherwise would not have.

188. Defendant made its untrue or misleading statements, omissions and representations willfully, wantonly, and with reckless disregard for the truth.

189. Defendant's Recall also violated GBL § 349 because it is a belated, inadequate, and ineffective Recall, which fails to provide reasonable consumers proper relief considering the premium price they paid for the specific and vital quality of safety and utility of the Products, only allows participation for those who still have the Products, and fails to provide any monetary remedy.

190. Plaintiffs and other New York Class Members have been injured inasmuch as they paid for Products that were represented to work as intended but received Products that contained the Defect. Accordingly, Plaintiffs and other New York Class Members received less than what they bargained or paid for.

191. Defendant's deceptive and misleading practices constitute deceptive acts and practices in the conduct of business in violation of New York General Business Law §349(a) and Plaintiffs and other members of the New York Class have been damaged thereby.

192. Defendant's actions impact the public interest because Plaintiffs and the New York Class have been injured in exactly the same way as millions of other consumers by Defendant's deceptive acts and practices as described herein.

193. Defendant's misrepresentations, misleading statements, and omissions were material to Plaintiffs and members of the New York Class.

194. Plaintiffs, individually and on behalf of the New York Class, seeks to recover actual damages or $50, whichever is greater, treble damages, reasonable attorneys' fees and costs, and any other just and proper relief available under GBL § 349.

**FIFTH CAUSE OF ACTION**
**Violations of New York General Business Law**
**N.Y. Gen. Bus. Law § 350**
(On behalf of Plaintiffs Jacqueline Dushaj, Steve Hess, and Geoffery vonMaucher, individually, and on the New York Class)

195. Plaintiffs Jacqueline Dushaj, Steve Hess, and Geoffery vonMaucher, (referred to as "Plaintiffs" for purposes of this Count) individually and on behalf of members of the New York Class, adopt and incorporate by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

196. This Count is brought for violation of the New York General Business Law § 350 ("GBL § 350").

197. N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

198. N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other

> things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

199. Defendant's labeling and advertisements contain untrue and materially misleading statements concerning Defendant's Products inasmuch as they misrepresent that the Products are safe for use on grills when that is not true.

200. Furthermore, the labeling and advertisements fail to reveal material facts about the Defect.

201. Plaintiffs and other New York Class Members have been injured inasmuch as they paid for the Products, which, contrary to Defendant's representations, were false and deceptive. Accordingly, Plaintiffs and other New York Class Members received less than what they bargained or paid for.

202. Defendant's packaging and product labeling induced Plaintiffs and New York Class Members to buy Defendant's Products.

203. Defendant made the untrue and misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

204. Defendant made the material misrepresentations described in this Complaint on its Products' packaging and labeling.

205. Defendant's material misrepresentations were substantially uniform in content, presentation, and impact on consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

206. As a result of Defendant's recurring acts and practices in violation of GBL § 350, Plaintiffs and New York Class Members seek to recover their actual damages or five hundred

dollars, whichever is greater, three times actual damages, reasonable attorneys' fees and costs, and any other just and proper relief available under GBL §350. Additionally, Plaintiffs seek injunctive relief.

**SIXTH CAUSE OF ACTION**
**Unjust Enrichment**
(On behalf of all Plaintiffs, individually, and on the Nationwide Class, and in the alternative in the State Classes)

207. Plaintiffs Ron Challis, Jacqueline Dushaj, Steve Hess, Christopher Hose, and Geoffrey vonMaucher (referred to as "Plaintiff" for purposes of this Count) incorporate and reallege each preceding paragraph as though fully set forth herein.

208. Plaintiffs bring this cause of action individually and on behalf of the Nationwide Class and in the alternative, the California, New Jersey, and New York Classes.

209. To the extent required, Plaintiffs assert this cause of action in the alternative to legal claims, as permitted by Rule 8.

210. The unjust enrichment claims are premised on Defendant's pre-sale activities and are unrelated to its post-sale obligations to provide repairs.

211. Plaintiffs and the Class Members conferred a benefit on Defendant in the form of the gross revenues Defendant derived from the money Plaintiffs and Class Members paid to Defendant.

212. Defendant knew of the benefit conferred on it by Plaintiffs and the Class Members.

213. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and the Class Members' purchases of the Products, which retention of such revenues under these circumstances is unjust and inequitable because Defendant omitted that the Products were dangerous. This caused injuries to Plaintiffs and Class Members because they would not have

purchased the Products or would have paid less for them if the true facts concerning the Products had been known.

214. Defendant accepted and retained the benefit in the amount of the gross revenues it derived from sales of the Products.

215. Defendant has profited by retaining the benefit under circumstances which would make it unjust for Defendant to retain the benefit.

216. Plaintiffs and the Class Members are, therefore, entitled to restitution in the form of the revenues derived from Defendant's sale of the Products.

217. As a direct and proximate result of Defendant's actions, Plaintiffs and Class Members have suffered in an amount to be proven at trial.

218. Plaintiffs and the Class Members have suffered an injury in fact and have lost money as a result of Defendant's unjust conduct.

219. Plaintiffs and the Class Members lack an adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

**SEVENTH CAUSE OF ACTION**
**Fraud**
(On behalf of all Plaintiffs, individually, and on the Nationwide Class, and in the alternative in the State Classes)

220. Plaintiffs Ron Challis, Jacqueline Dushaj, Steve Hess, Christopher Hose, and Geoffrey vonMaucher (referred to as "Plaintiff" for purposes of this Count) incorporate and reallege each preceding paragraph as though fully set forth herein.

221. Defendant's conduct was fraudulent because it had the effect of deceiving consumers into believing its marketing of the Products as safe when in fact the Products contain the Defect.

222. Defendant knowingly, willfully, fraudulently, and/or recklessly concealed and suppressed material facts regarding the Products.

223. As detailed above, Defendant made false or misleading statements to Plaintiffs and Class Members regarding the quality, utility, and safety of the Products. These uniform and pervasive representations were made through Defendant's marketing of the Products as industry leaders in grilling products, labels and packaging materials, the websites of Defendant and its authorized retailers and other promotional materials for the Products.

224. Defendant's representations were false and misleading because the Products contain the Defect and because of the associated risks to consumers, including injury.

225. As described above, prior to and after distributing the Products into the consume marketplace, Defendant knew that the Products contained the Defect and presented the associate risks to consumers. Nonetheless, Defendant, through its misrepresentations, misleading statement and omissions detailed herein, continued to sell the Products in the United States in order to increase its own profits and garner market share, while putting the lives of consumers at risk.

226. Defendant knew the representations were false and intended that Plaintiffs and Class Members rely on them.

227. Defendant's conduct was further fraudulent because Defendant failed to disclose the Defect associated with the Products. Specifically, Defendant failed to adequately warn Plaintiffs and Class Members that the Products contained the Defect, were not safe and could cause and had caused injury.

228. These misrepresentations and omissions were material to the decision of Plaintiffs and Class Members to acquire the Products. Plaintiffs and Class Members justifiably relied on

Defendant's misrepresentations of material facts and omissions regarding the Products, as described above.

229. Defendant has a duty to disclose the truth regarding the safety of the Products because the safety of the Products has a direct impact on the health and safety of the consumers who utilize them. This duty arose from the fact that Defendant: (a) had exclusive and/or far superior knowledge and access to knowledge regarding the safety and durability of the Products; (b) affirmatively and intentionally concealed material facts from Plaintiffs and Class Members; and (c) knew that the Products were not safe for their marketed and intended use.

230. The material facts Defendant represented and omitted to disclose were made t Plaintiffs and Class Members when they purchased the Products.

231. Defendant intended that its misrepresentations and omissions of material fact would deceive or mislead Plaintiff and Class Members and induce them to purchase the Products.

232. Plaintiffs and Class Members justifiably relied on Defendant's misrepresentations and omissions of material facts regarding the Products.

233. Defendant's conduct showed malice, motive and a reckless disregard of the truth such that an award of punitive damages is appropriate.

234. Defendant's misrepresentations and omissions of material facts directly and proximately caused the damages suffered by Plaintiffs and Class Members.

235. As a result of Defendant's misrepresentations and omissions of material facts. Plaintiffs and Class Members were damaged in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION
## Negligence
(On behalf of all Plaintiffs, individually, and on the Nationwide Class, and in the alternative in the State Classes)

236. Plaintiffs Ron Challis, Jacqueline Dushaj, Steve Hess, Christopher Hose, and Geoffrey vonMaucher (referred to as "Plaintiff" for purposes of this Count) incorporate and reallege each preceding paragraph as though fully set forth herein.

237. Defendant directly or indirectly caused the Products to be sold, distributed, packaged, labeled, marketed, promoted and/or used by Plaintiffs and the Class Members.

238. At all times relevant, Defendant had a duty to exercise reasonable care in the design, testing, research, manufacture, marketing, advertisement, supply, promotion, packaging, sale and distribution of the Products, including the duty to take all reasonable steps necessary to manufacture, promote and/or sell a product that was not unreasonably dangerous to consumers and users of the Products.

239. Defendant's duty of care owed to consumers and the general public include providing accurate, true and correct information concerning the risks of using the Products and appropriate, complete and accurate warnings concerning the potential safety risks regarding the use of the Products, and, in particular, their uniform Defect.

240. Defendant knew, or otherwise should have known, that the Products posed serious safety risks to consumers, because of, among other things, their own internal testing, data and surveys, the Recall, various publications, and the multiple reports of injuries associated with the Defect.

241. Defendant also knew or, in the exercise of reasonable care should have known, that users and consumers of the Products were unaware of the Defect of the Products and the associated risks.

242. Defendant omitted, concealed and failed to disclose to consumers that the Products pose serious safety risks to consumers, including that the Products were inherently defective; unreasonably dangerous; not fit to be used for their intended purpose; and contained a Defect.

243. Defendant was negligent in the following respects:

a. Manufacturing, producing, promoting, formulating, creating, developing, designing, selling and/or distributing the Products without thorough and adequate pre-and post-market testing;

b. Manufacturing, producing, promoting, formulating, creating, developing, designing, selling and/or distributing the Products while negligently and/or intentionally concealing and failing to disclose the results of trials and tests, and, consequently, the risk of serious injury associated with use of the Products;

c. Failing to use reasonable and prudent care in the design, research, manufacture and development of the Products to avoid the risk of serious harm to consumers associated with the prevalent use of the Products;

d. Failing to provide adequate instructions, guidelines and safety precautions to those consumers whom Defendant could reasonably foresee would use the Products;

e. Failing to disclose to Plaintiffs, Class Members, users/consumers and the general public that use of the Products presented risks or serious injury to consumers;

f. Failing to warn Plaintiffs and Class Members, consumers and the general public that the Products' risk of harm was unreasonable and that there were safer and effective alternative Products available to Plaintiffs and other consumers;

g. Representing that its Products were safe for their intended use when, in fact, Defendant knew, or should have known, that the Products were not safe or suitable for their intended purpose;

h. Failing to timely or adequately make and/or submit any changes to the Products' labeling or other promotional materials that would alert the consumers and the general public of the risks of the Products and related Defect;

i. Advertising, marketing and recommending the use of the Products while concealing and failing to disclose or warn of the dangers

known be Defendant to be associated with or caused by the use of the Products and/or Defect;

j. Continuing to disseminate information to its consumers, which indicates or implies that Defendant's Products are safe and suitable for their advertises and intended use;

k. Continuing the manufacture and sale of its Products with the knowledge that the Products were unreasonably unsafe and dangerous to consumers; and

l. Implementing the inadequate Recall.

244. Defendant knew, or otherwise should have known, that it was foreseeable that consumers, including Plaintiffs and the Class Members, would be placed at risk of serious injury as a result of Defendant's failure to exercise ordinary care in the manufacturing, marketing, promotion, labeling, distribution and/or sale of the Products.

245. Plaintiffs and the Class Members did not know the nature and extent of the injuries that could result from the intended use of the Products.

246. Defendant's negligence was the proximate cause of the injuries, harm and economic losses that Plaintiffs and the Class Members suffered, as described herein.

247. Defendant's failure to warn or instruct was a substantial factor in causing Plaintiffs' and Class Members' harm.

248. Defendant's conduct, as described above, was reckless. Defendant regularly risked the lives of consumers and users of the Products, including Plaintiffs and the Class Members, with full knowledge of the dangers of the Products. Defendant made conscious decisions not to redesign, re-label, warn or inform the unsuspecting public, including Plaintiffs and the Class Members.

249. Defendant further made the decision to issue the insufficient and inadequate Recall, as described above.

250. As a direct and proximate result of Defendant's wrongful acts and omissions in placing the defective Products into the stream of commerce without adequate warnings of the risks of serious injury, Plaintiffs and the Class Members were damaged.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the proposed Class, prays for the following relief:

A. Certification of the proposed Classes;

B. Appointment of Plaintiffs as representatives of the Classes;

C. Appointment of undersigned counsel as counsel for the Classes;

D. A declaration that Defendant's actions complained of herein violated the statutes referenced herein;

E. For an order finding in favor of Plaintiffs and Class Members on all counts asserted herein;

F. For an award of injunctive or other equitable relief as is necessary to protect the interests of Plaintiffs and the Class Members, including, *inter alia*, an order prohibiting Defendant from engaging in the unlawful acts described above;

G. For actual, compensatory, statutory, nominal, and/or punitive damages in amounts to be determined by the Court and/or jury;

H. For prejudgment interest on all amounts awarded;

I. For an order of restitution and all other forms of equitable monetary relief;

J. For an order awarding Plaintiffs and Class Members their reasonable attorney fees, expenses, and costs of suit.

K. Orders granting such other and further relief as the Court deems necessary, just, and proper.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all claims so triable.

Dated: June 1, 2026


**SMITH KRIVOSHEY, PC**

By: *_/s/ Brittany S. Scott_*
Brittany S. Scott*
28 Geary Street, Suite 650, No. 1507
San Francisco, CA 94108
Telephone: (415) 839-7077
Facsimile: (888) 410-0415
E-Mail: Brittany@skclassactions.com

Frederick J. Klorczyk III*
**KAMBERLAW, LLC**
305 Broadway, Suite 713
New York, NY 10007
Tel: (646) 964-9604
Fax: (212) 202-6364
Email: fklorczyk@kamberlaw.com

Rachel Soffin (FL Bar No. 18054)
**PEARSON WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104
Email: rsoffin@pwfirm.com

Melissa S. Weiner (MN Bar No. 0387900)
**PEARSON WARSHAW, LLP**
328 Barry Avenue S., Suite 200
Wayzata, Minnesota 55391
Telephone: (612) 389-0600
Facsimile: (612) 389-0610
Email: mweiner@pwfirm.com

Ben Travis
**BEN TRAVIS LAW, APC**
12481 High Bluff Drive, Suite 300
San Diego, California 92130
Telephone: (619) 353-7966
Email: ben@bentravislaw.com
Nick Suciu III

**BRYSON HARRIS SUCIU & DEMAY PLLC**
6905 Telegraph Road, Suite 115
Bloomfield Hills, MI 48301
Telephone: (616) 678-2180
Email: nsuciu@brysonpllc.com

Trenton R. Kashima
**BRYSON HARRIS SUCIU & DEMAY PLLC**
19800 MacArthur Blvd., Suite 270
Irvine, CA 92612
Telephone: (212) 946-9389
Email: tkashima@brysonpllc.com

Tyler Litke (6330041)
Mark S. Reich*
Michael N. Pollack*
**LEVI & KORSINSKY, LLP**
33 Whitehall Street, 27th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: tlitke@zlk.com
Email: mreich@zlk.com
Email: mpollack@zlk.com

Paul J. Doolittle (Lic. No. 66490)
**POULIN | WILLEY|**
**ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403
Tel: 803-222-2222
Fax: 843-494-5536
Email: paul.doolittle@poulinwilley.com
cmad@poulinwilley.com
**Generally Admitted*

***Attorneys for Plaintiffs and the Proposed Classes***

**CLRA Venue Declaration, Civil Code § 1780(c)**

I, Brittany S. Scott, declare as follows:

1. I have personal knowledge of the facts stated herein and, if called upon to do so, could competently testify hereto.

2. I am the attorney for Plaintiff Challis in the above-captioned action.

3. I submit this declaration in support of the Consolidated Amended Complaint, which is based in part on violations of the Consumers Legal Remedies Act, California Civil Code § 1750 *et seq.*

4. The Consolidated Amended Complaint has been filed in the proper place for trial of this action.

5. It is my understanding that Defendant regularly transacts business in this District, and the acts and omissions giving rise to this action occurred in large part in in this District.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge. Executed on June 1, 2026 in Oakland, CA.

By: *__/s/ Brittany S. Scott____*
Brittany S. Scott